**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DAN DECHIRICO, ANGEL GUZMAN and
JOSHUA PALMER,

               Plaintiffs,

          v.

ALLY FINANCIAL INC., ALPACA
SECURITIES LLC, CASH APP INVESTING
LLC, SQUARE INC., MORGAN STANLEY
SMITH BARNEY LLC, E*TRADE
SECURITIES LLC, E*TRADE FINANCIAL
CORPORATION, E*TRADE FINANCIAL
HOLDINGS, LLC, ETORO USA
SECURITIES, INC., FREETRADE, LTD.,
INTERACTIVE BROKERS LLC, M1
FINANCE, LLC, OPEN TO THE PUBLIC
INVESTING, INC., ROBINHOOD
FINANCIAL, LLC, ROBINHOOD
MARKETS, INC., ROBINHOOD
SECURITIES, LLC, IG GROUP HOLDINGS
PLC, TASTYWORKS, INC., TD
AMERITRADE, INC., THE CHARLES
SCHWAB CORPORATION, CHARLES
SCHWAB & CO. INC., FF TRADE
REPUBLIC GROWTH, LLC, TRADING 212
LTD., TRADING 212 UK LTD., WEBULL
FINANCIAL LLC, FUMI HOLDINGS, INC.,
STASH FINANCIAL, INC., BARCLAYS
BANK PLC, CITADEL ENTERPRISE
AMERICAS, LLC, CITADEL SECURITIES
LLC, MELVIN CAPITAL MANAGEMENT
LP, SEQUOIA CAPITAL OPERATIONS LLC,
APEX CLEARING CORPORATION, THE
DEPOSITORY TRUST & CLEARING
CORPORATION,

               Defendants.

**Civil Action No.:  1:21-cv-00677**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Dan Dechirico, Angel Guzman and Joshua Palmer (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendants, as defined below, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, Section 16 of the Clayton Act, 15 U.S.C. § 26, state antitrust and consumer protection laws, and common law, and hereby allege as follows:

## I.     NATURE OF THE ACTION

1.     This class action arises from a conspiracy to deprive individual investors, commonly referred to as retail investors, of their ability to invest in the open market in the midst of an unprecedent stock rise so that Defendants could shield themselves from incurring substantial losses as a result of their own high-risk short selling strategies.

2.     In furtherance of this conspiracy, on or about January 28, 2021, the Brokerage Defendants,[1] willfully and intentionally restricted retail investors from purchasing the following securities on their websites and/or mobile applications by disabling all buy features, thereby manipulating the market: GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Castor Maritime Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), or Trivago N.V. (TRVG) (collectively, hereinafter the "Relevant Securities").

3.     By conspiring to restrict retail investors from purchasing the Relevant Securities, Defendants created a one-way buy-sell situation thereby forcing retail investors to either hold or sell their rapidly declining stocks.

---

[1] "Brokerage Defendants" is defined *infra*, at Section III.B.

4.    Notably, while the Brokerage Defendants placed restrictions on retail investors, no such restriction were placed on institutional investors (*i.e.*, the Fund Defendants).[2]  As a result, the only entities which were permitted to purchase the Relevant Securities were institutional investors (*i.e.*, the Fund Defendants), many of whom were leveraged heavily "short"[3] against the Relevant Securities and had a vested interest in seeing the Relevant Securities' prices depressed so that they could cover their short sales at a lower cost.

5.    As a result of Defendants' unlawful and anticompetitive scheme, numerous retail investors (*i.e.*, Plaintiffs and other Class members) suffered significant losses.

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and in which some members of the proposed class are citizens of a state different from some defendants.

7.    This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that Plaintiff brings claims under Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 16 of the Clayton Act, 15 U.S.C. § 26.

8.    This Court has supplemental jurisdiction over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367.

9.    Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because Defendants transact business within this district, and/or have an agent and/or can be found in this district, and

---

[2] "Fund Defendants" is defined *infra*, at Section III.C.
[3] Shorting, or short-selling, is when an investor borrows shares and immediately sells them, hoping he or she can purchase them later at a lower price, return them to the lender and profit from the difference.

the interstate trade and commerce, hereinafter described, is carried out, in substantial part, in this district.

## III.    PARTIES

### A. Plaintiffs

10.     Plaintiff Dan Dechirico ("Dechirico") is a resident of Richmond County in the State of New York.  Prior to January 28, 2021, Dechirico purchased and owned positions in AMC Entertainment Holdings Inc., Bed Bath & Beyond Inc., BlackBerry Ltd. and Express, Inc. through Robinhood.

11.     On January 28, 2021, Plaintiff Dechirico was unable to purchase the Relevant Securities because Defendant Robinhood had deactivated the "buy" features on its applications due to the anticompetitive scheme.

12.     Plaintiff Angel Guzman ("Guzman") is a resident of New York County in the State of New York.  Prior to January 28, 2021, Guzman purchased and owned positions in GameStop Corp., AMC Entertainment Holdings Inc., BlackBerry Ltd., Nokia Corp. and Express, Inc. through Robinhood.

13.     On January 28, 2021, Plaintiff Guzman was unable to purchase the Relevant Securities because Defendant Robinhood had deactivated the "buy" features on its applications due to the anticompetitive scheme.

14.     Plaintiff Joshua Palmer ("Palmer") is a resident of Nassau County in the State of New York.  Prior to January 28, 2021, Palmer purchased and owned positions in AMC Entertainment Holdings Inc. and Nokia Corp. through Robinhood.

15.     On January 28, 2021, Plaintiff Palmer was unable to purchase the Relevant Securities because Defendant Robinhood had deactivated the "buy" features on its applications due to the anticompetitive scheme.

16.     On January 29, 2021, Plaintiff Palmer sold positions in AMC Entertainment Holdings Inc. as a result of the anticompetitive scheme.

**B. Brokerage Defendants**

17.     Defendant Ally Financial Inc. ("Ally") is a Delaware corporation, with its headquarters located at Ally Detroit Center 500, Woodward Ave., Floor 10, Detroit, Michigan. Ally provides financial services including an electronic trading platform to trade financial assets. Ally sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

18.     Defendant Alpaca Securities LLC ("Alpaca") is a Delaware corporation, with its headquarters at 20 N. San Mateo Drive Suite 10, San Mateo, California.  Alpaca provides financial services including an electronic trading platform to trade financial assets.  Alpaca sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

19.     Defendant Cash App Investing LLC ("Cash App Investing") is a Delaware corporation headquartered at 920, SW 6th Avenue Ste. 1200, Portland, Oregon.  Cash App Investing is a wholly owned subsidiary of Square Inc. Cash App Investing provides financial services including an electronic trading platform to trade financial assets.  Cash App Investing sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

20.     Defendant Square Inc. is a Delaware corporation with its headquarters located at 1455 Market Street, Suite 600, San Francisco, California.  Square Inc. and Cash App Investing LLC are referred collectively as "Cash App."

21.     Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley") is a Delaware limited-liability corporation and parent company of E*Trade, with its headquarters located at 1585 Broadway Avenue, New York, New York.  Morgan Stanley is the owner and ultimate parent of E*Trade Securities LLC, E*Trade Financial Corporation, and E*Trade Financial Holdings.

22.     Defendant E*Trade Securities LLC is a Delaware limited-liability corporation, with its headquarters at 671 North Glebe Road, Ballston Tower, Arlington, Texas.

23.     Defendant E*Trade Financial Corporation is a Delaware corporation, with its headquarters at 671 North Glebe Road, Ballston Tower, Arlington, Texas.

24.     Defendant E*Trade Financial Holdings, LLC is a Delaware limited-liability corporation, with its headquarters at 671 North Glebe Road, Ballston Tower, Arlington, Texas. Morgan Stanley, E*Trade Securities LLC, E*Trade Financial Corporation, and E*Trade Financial Holdings are collectively referred to as "E*Trade."

25.     Defendant Etoro USA Securities, Inc. ("eToro") is a Delaware corporation and owner of the application eToro, headquartered at 221 River St., 9th floor, Hoboken, New Jersey. eToro provides financial services including an electronic trading platform to trade financial assets. eToro sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

26.     Defendant Freetrade, Ltd. ("Freetrade") is a company incorporated in the United Kingdom, headquartered at 32-38 Leman Street, London, United Kingdom. Freetrade provides financial services including an electronic trading platform to trade financial assets.  Freetrade sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

27.     Defendant Interactive Brokers LLC ("Interactive Brokers") is a Delaware limited liability corporation headquartered at 1 Pickwick Plaza, Greenwich, Connecticut.   Interactive

Brokers provides financial services including an electronic trading platform to trade financial assets. Interactive Brokers sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

28.     Defendant M1 Finance, LLC ("M1 Finance") is a Delaware corporation headquartered at 200 North La Salle Street, Suite 800, Chicago, Illinois. M1 Finance provides financial services including an electronic trading platform to trade financial assets. M1 Finance sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

29.     Defendant Open To The Public Investing, Inc. ("Public.com") is a New York corporation, headquartered at 1 State Street Plaza, 10th Floor, New York, New York. Public.com provides financial services including an electronic trading platform to trade financial assets. Public.com sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

30.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California. Defendant Robinhood Markets, Inc. is the corporate parent of and controls the affairs of Defendants Robinhood Financial, LLC and Robinhood Securities, LLC.

31.     Defendant Robinhood Financial, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California. It is a wholly- owned subsidiary of Robinhood Markets, Inc. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities.

32.     Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida.  It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc.   Defendant Robinhood Financial (collectively, with Robinhood Financial, LLC and Robinhood Markets, Inc. "Robinhood").

33.     Robinhood provides financial services including an electronic trading platform to trade financial assets.  Robinhood sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

34.     Defendant Barclays Bank PLC is a company incorporated in the United Kingdom, and headquartered at 745 7th Ave New York, New York. Barclays Bank PLC is the ultimate corporate parent of, and controls the affairs of Stash Financial, Inc.

35.     Defendant Stash Financial, Inc. ("Stash") is a Delaware corporation and owner of the application Stash, headquartered at 500 7th Avenue,18th Floor, New York, New York.  Stash is a wholly-owned subsidiary of Barclays Bank PLC.  Stash provides financial services including an electronic trading platform to trade financial assets. Stash and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

36.     Defendant IG Group Holdings PLC is a Delaware public limited company and ultimate corporate parent of and controls the affairs Tastyworks, Inc., headquartered at 200 West Jackson Blvd., Suite 1450, Chicago, Illinois.

37.     Defendant Tastyworks, Inc. is a Delaware corporation and wholly-owned subsidiary of IG Group Holdings PLC, headquartered at 100 West Fulton Market Street, Suite 220, Chicago, Illinois (IG Holdings and Tastyworks, Inc. collectively, "Tastyworks").

38.     Tastyworks provides financial services including an electronic trading platform to trade financial assets.  Tastyworks sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

39.     Defendant The Charles Schwab Corporation is a Delaware corporation with its principal place of business at 211 Main Street, San Francisco, California.  The Charles Schwab Corporation is the ultimate corporate parent of and controls the affairs of Charles Schwab & Co., Inc. and TD Ameritrade Inc.

40.     Defendant Charles Schwab & Co. Inc. is a California corporation with its principal place of business at 211 Main Street, San Francisco, California. Charles Schwab & Co. Inc. is a wholly owned subsidiary of The Charles Schwab Corporation.

41.     Defendant TD Ameritrade, Inc. is a New York corporation with its principal place of business in Illinois.  As of October 2020, The Charles Schwab Corporation acquired TD Ameritrade, Inc.  The Charles Schwab Corporation, Charles Schwab & Co., Inc. and TD Ameritrade, Inc. collectively, "TD Ameritrade."  TD Ameritrade provides financial services including an electronic trading platform to trade financial assets. TD Ameritrade sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

42.     Defendant FF Trade Republic Growth, LLC ("Trade Republic") is a Delaware corporation, headquartered at One Letterman Drive, Building D, 5th Floor, San Francisco, California.  Trade Republic provides financial services including an electronic trading platform to trade financial assets.  Trade Republic sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

43.     Defendant Trading 212 Ltd. is a Bulgarian company headquartered at 3 Lachezar Stanchev Str., Litex Tower, Floor 10, Sofia 1797, Bulgaria.  Trading 212 Ltd. is the ultimate corporate parent of and controls the affairs of Trading 212 UK Ltd. 56.

44.     Defendant Trading 212 UK Ltd. is a company incorporated in the United Kingdom headquartered at 107 Cheapside, London, United Kingdom. Trading 212 UK Ltd. a wholly-owned subsidiary of Trading 212 Ltd. (Trading 212 Ltd. and Trading 212 UK Ltd. collectively, "Trading 212").  Trading 212 provides financial services including an electronic trading platform to trade financial assets.  Trading 212 sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

45.     Defendant Fumi Holdings, Inc. is a Chinese corporation. Fumi Holdings, Inc. and headquartered in Hunan, China. Fumi Holdings, Inc. is the corporate parent of, and controls the affairs of Webull Financial LLC.

46.     Defendant Webull Financial LLC ("WeBull") is a Delaware corporation and wholly-owned subsidiary of Fumi Holdings, Inc., headquartered at 44 Wall Street, Ste 501, New York, New York.  WeBull is a wholly-owned subsidiary of Fumi Holdings, Inc.  WeBull provides financial services including an electronic trading platform to trade financial assets.  WeBull sold and/or restricted the sale of Relevant Securities to members of the Class during the Class Period.

**C.  Fund Defendants**

47.     Defendant Citadel Enterprise Americas LLC is a Delaware limited-liability corporation, headquartered at 131 South Dearborn Street, Chicago, Illinois.  Citadel Enterprise Americas LLC is the corporate parent of, and controls the affairs of Citadel Securities LLC.

48.     Defendant Citadel Securities LLC is a Delaware limited-limited corporation, headquartered at 131 South Dearborn Street, Chicago, Illinois.  Citadel Securities LLC is a wholly-

owned subsidiary of Citadel Enterprise Americas LLC. Citadel Enterprise Americas, LLC and Citadel Securities LLC collectively, "Citadel."   Defendant Citadel took short positions in the Relevant Securities. Citadel actively participated in the conspiracy and the wrongful acts alleged herein.

49.     Defendant Melvin Capital Management LP ("Melvin Capital") is a Delaware limited partnership headquartered at 535 Madison Avenue, 22nd Floor, New York, New York. Defendant Melvin Capital took short positions in the Relevant Securities. Melvin Capital actively participated in the conspiracy and the wrongful acts alleged herein.

50.     Defendant Sequoia Capital Operations LLC ("Sequoia") is a Delaware limited-liability corporation, headquartered at 2800 Sand Hill Road, Suite 101, Menlo Park, California. Defendant Sequoia actively participated in the conspiracy and the wrongful acts alleged herein.

**D. Clearinghouse Defendants**

51.     Defendant Apex Clearing Corporation ("Apex") is a New York corporation headquartered at One Dallas Center, 350 N. St. Paul, Suite 1300, Dallas, Texas.  Defendant Apex participated in the conspiracy and the wrongful acts alleged herein.

52.     Defendant The Depository Trust & Clearing Corporation ("DTCC") is a New York company headquartered at 55 Water Street, New York, New York. Defendant DTCC participated in the conspiracy and the wrongful acts alleged herein.

53.     All of Defendants' anticompetitive and wrongful actions described in this complaint are part of, and in furtherance of, the illegal restraint of trade alleged herein, and were authorized, ordered, and/or undertaken by Defendants' various officers, agents, employees, or other representatives while actively engaged in the management of Defendants' affairs (or that of

their predecessors-in-interest) within the course and scope of their duties and employment, and/or with the actual, apparent, and/or ostensible authority of Defendants.

## IV.    FACTUAL ALLEGATIONS

54.    Retail investors, like Plaintiffs and the other members of the Class, are non-professional market participants who generally invest smaller amounts and trade through traditional or online brokerage firms, such as the Brokerage Defendants, or other types of investment accounts through websites, apps and/or other trading platforms.  They do not manage money on someone else's behalf, rather, they manage their own money.

55.    Due to their smaller trades, retail investors may pay higher fees and commissions, although some online brokers, such as Defendant Robinhood, offer no-fee trading[4] and have even enticed individual investors with slogans such as "[l]et the people trade," implying that the stock market should be open and available to all participants regardless of size or sophistication.

56.    Contrary to retail investors, institutional investors, such as the Fund Defendants, are companies or organizations that invests money on behalf of other people.  Generally, there are six types of institutional investors: endowment funds, commercial banks, mutual funds, hedge funds, pension funds, and insurance companies.  Due to their size and resources, institutional investors are considered savvier than the average retail investor and are often subject to less regulatory oversight.  Simply stated, retail investors are the David and institutional investors are the Goliath.

57.    On or around January 11, 2021, stocks prices in the Relevant Securities, such as GameStop (GME) began to rise, due in large part to retail investors exchanging information

---

[4] Defendant Robinhood does not charge their investors a fee per transaction, but instead earns revenue through rebates, kickbacks and other payments from market makers like the Clearinghouse Defendants.

regarding investments on social networking sites, such as Reddit, and their purchases of "long"[5] positions in the Relevant Securities companies, including stocks, option contracts and other securities.

58.     Believing that some of the Relevant Securities were undervalued, retail investors, including Plaintiffs and the members of the Class, continued to purchase the Relevant Securities, thereby skyrocketing the per share price of some of the Relevant Securities, such as GME.

59.     Meanwhile, the institutional investors, including the Fund Defendants, acquired massive "short"[6] positions in the Relevant Securities.  In so doing, the Fund Defendants made highly speculative bets.  When the Relevant Securities increased in value, due in large part to retail investors purchasing the Relevant Securities and increasing stock prices, the Fund Defendants, Clearinghouse Defendants and unnamed co-conspirators were exposed to potential losses of several billion dollars.

60.     To the Fund Defendants' dismay, retail investors continued to purchase long positions in the Relevant Securities, and as a result, the stock prices of these companies continued to rise resulting in what is referred to as a "short squeeze."

61.     A short squeeze occurs when a stock or other asset rises sharply in value, distressing short positions in the asset.  A short squeeze therefore is when investors in short positions are faced with a rapid increase in the shorted asset's value, exposing the short seller to increased loss.  As the price of the asset rises, short sellers may face pressure to buy back stock to exit their short

---

[5] Having a "long" position in a security means that the investor owns the security. Investors maintain "long" security positions in the expectation that the stock will rise in value in the future. The opposite of a "long" position is a "short" position.
[6] As set forth above, a "short" position is generally the sale of a stock the investor does not own. "Short" sellers borrow shares of an asset they believe will fall in price only to buy them after the asset depreciates in value.

positions to mitigate their losses.  In the absence of intervention, as short sellers exit their short positions to buy back stocks to cover their shorts, the purchase of stock further increases the price of the stock.

62.    In order to stop the bleed, institutional investors holding large short positions in the Relevant Securities attempted to convince the retail investors that the Relevant Securities were not as valuable as perceived.  However, their efforts failed as retailer investors continued to buy long positions in the Relevant Securities thereby further exposing the short sellers, such as the Fund Defendants, to substantial losses.

63.    To prevent further loss, Defendants then orchestrated an anticompetitive scheme to limit trading in the Relevant Securities.

64.    Upon information and belief, after the market closed on January 27, 2021, after-hour traders[7] continued to take more short positions in one of the Relevant Securities, GME, thereby insinuating a GME sell off.  Nonetheless, chatter in the retail investor forums, such as Reddit, indicated that the retail investors would continue purchasing the Relevant Securities.

65.    However, on January 28, 2021, Plaintiffs and the members of the Class woke up to learn that the Brokerage Defendants, such as Defendant Robinhood, had suddenly and without prior notice[8] restricted their ability to buy long positions in the Relevant Securities by disabling all buy features on their respective websites and/or mobile applications.[9]

---

[7] Notably, after-hours trading is not permitted for retail investors and is restricted to institutional investors such as the Fund Defendants.

[8] Defendant Robinhood circulated an email to its customers at 1:00am EST on January 29, 2021, the same day it restricted trading, stating that "[e]ffective immediately, all GME and AMC options with expirations of January 29th, 2021 will be set to closing transactions only."  Defendant Robinhood's website later revealed restrictions on all of the Relevant Securities.

[9] Various reports indicated that the SEC was monitoring the rapidly increasing price of the Relevant Securities, but there was no governmental guidance or mandate restricting trading in the Relevant Securities prior to the January 28, 2021 shutdown.

66.     Upon information and belief, some retail investors had their queued purchase orders cancelled without their consent, while other were unable to search for the Relevant Securities on certain of the Brokerage Defendants' platforms.   Upon further information and belief, the Brokerage Defendants implemented similar, if not identical restrictions.

67.     Defendants' anticompetitive scheme to restrict retail investors from purchasing the Relevant Securities created a one-way buy-sell situation thereby forcing retail investors to either hold or sell their rapidly declining stocks leading to a massive sell-off and resulting in an even steeper decline in the prices of the Relevant Securities.

68.     As mentioned *supra*, the Brokerage Defendants' restriction on purchasing did not extend to the Fund Defendants.  Thus, the Fund Defendants were able to cover their short positions by buying securities at the artificially reduced price.

69.     Indeed, not all brokerages joined in the conspiracy, however, the Clearinghouse Defendants raised the fees and/or removed the ability to fill purchases of the Relevant Securities to brokerages that did not comply with the anticompetitive conduct.[10]   By so doing, the Clearinghouse Defendants further facilitated the Fund Defendants covering their short positions in furtherance of the conspiracy.

70.     As further evidence of Defendants' anticompetitive scheme, an employee of Defendant Robinhood reported in online forum that Robinhood's founder and other c-level executives had received calls from Defendant Sequoia Capital pressuring Defendant Robinhood into restricting trading on one or more of the Relevant Securities.

---

[10] Brokerages route trades through clearinghouses which streamlines the trading process.  Some brokerages, such as Defendant Robinhood, serve as their own clearinghouse. By increasing fees to purchase a particular stock, the clearinghouse can suppress the number of purchases of that stock and affect the stock's price.

71.     Defendants' anticompetitive scheme soon drew the ire of journalists, lawmakers and the SEC, who issued a formal statement that it was investigating the situation on January 29, 2021.

72.     Despite the backlash, Defendants continued their anticompetitive behavior after January 28, 2021.  Although the broad-based restrictions on the purchase of long positions in the Relevant Securities have all but been lifted, purchases have been heavily restricted and the number of shares of certain of the Relevant Securities have continued to be limited.

73.     Rather ironically, on February 2, 2021, Defendant Robinhood circulated an email to its customers asserting that "[w]e have always sought to put our customers first and we want you to be able to invest on your own terms."  The email further stated that "[w]e didn't want to stop people from buying stocks and we certainly weren't trying to help hedge funds."

74.     The aforementioned email also contained an embedded link to a "letter to our customers," regurgitating similar verbiage.   While Robinhood's campaign of championing individual investors may have worked in the past, the Company's recent assertion that "[we] believe the financial system should be built to work for everyone" seems rather disingenuous in light of Defendant Robinhood's actions just days prior.

## V.     CLASS ACTION ALLEGATIONS

75.     Plaintiffs bring this action for damages and injunctive relief on behalf of themselves and all others similarly situated as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

    a.  All persons or entities in the United States that directly purchased securities
        in GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC),
        American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY),
        BlackBerry Ltd. (BB), Castor Maritime Inc. (CTRM), Express, Inc.
        (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD),
        Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie Roll Industries,

16

Inc. (TR), or Trivago N.V. (TRVG) from one or more of the Defendants between January 1, 2021 through and until the anticompetitive effects of Defendants' unlawful conduct cease (the "Class Period").

b. All persons or entities in the United States that placed an order, after the close of the market on January 27, 2021, to purchase   securities in GameStop Corp. (GME), AMC Entertainment Holdings Inc. (AMC), American Airlines Group Inc. (AAL), Bed Bath & Beyond Inc. (BBBY), BlackBerry Ltd. (BB), Castor Maritime Inc. (CTRM), Express, Inc. (EXPR), Koss Corporation (KOSS), Naked Brand Group Ltd. (NAKD), Nokia Corp. (NOK), Sundial Growers Inc. (SNDL), Tootsie Roll Industries, Inc. (TR), or Trivago N.V. (TRVG) from one or more of the Defendants but that order was cancelled or otherwise not filled due to the anticompetitive effects of Defendants' unlawful conduct.

76.     Expressly excluded from the Classes are Defendants and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; Court staff assigned to this case; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

77.     Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

78.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information and belief, there are hundreds of thousands of Class members geographically dispersed throughout the United States and elsewhere.

79.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

a.  whether Defendants combined or conspired with one another to artificially suppress prices for the Relevant Securities at any time during the Class Period to purchasers in the United States;

b.  whether Defendants combined or conspired with one another to fix, raise, maintain, stabilize and/or suppress prices for Relevant Securities at any time during the Class Period to purchasers in the United States;

c.  whether Defendants' conduct caused the prices of the Relevant Securities, sold or held by the Retail Investors in the United States at any time during the Class Period to be artificially fixed, suppressed, maintained or stabilized;

d.  whether Plaintiffs and the other members of the Classes were injured by Defendants' conduct and, if so, the appropriate Class-wide measure of damages; and

e.  whether Plaintiffs and other members of the Classes are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such relief.

80.     These and other questions of law and fact are common to the Classes and predominate over any questions affecting the Class members individually.

81.     Plaintiffs' claims are typical of the claims of the Classes, as all Class members were and are similarly affected by Defendants' wrongful conduct, and the relief sought herein is common to all members of the Classes.

82.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes.  Plaintiffs understand that as class representatives, Plaintiffs assume a fiduciary responsibility to the Classes to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class

just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Classes.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiffs have retained counsel competent and experienced in complex class action litigation.  There are no conflicts between Plaintiffs and the Class members.

83.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation.  The Class members have been damaged and are entitled to recover as a result of Defendants' violations of federal, state and common law.  Although the relative damages suffered by individual Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' records and to vigorously prosecute a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

84.     This action is properly maintainable as a class action as Plaintiffs and their counsel anticipate no difficulty in the management of this litigation as a class action.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF THE SHERMAN ACT
### 15 U.S.C. § 1
### (Against All Defendants)

85.     Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

19

86.     Upon information and belief, in violation of Section 1 of the Sherman Antitrust Act, Defendants combined, conspired, agreed and/or contracted to enter into an anticompetitive scheme to manipulate the market by restricting Plaintiffs and the Class from purchasing shares of the Relevant Securities.

87.     The Fund Defendants conspired, combined, agreed, and colluded with the Brokerage and Clearinghouse Defendants to restrict Plaintiffs and the Class from purchasing shares of the Relevant Securities, while placing no such restriction on the Fund Defendants, in order to drive the price of the Relevant Securities down so that the Fund Defendants could purchase the Relevant Securities at artificially deflated prices to cover their short positions.

88.     Despite restricting Plaintiffs and the Class from purchasing shares of the Relevant Securities, the Brokerage Defendants have continued to allow Plaintiff and the Class to sell shares of the Relevant Securities.  Faced with sharp decreases in the price of their positions in the Relevant Securities due to Defendants' unlawful conduct, Plaintiffs and the Class were induced to sell their shares in the Relevant Securities at a lower price than they otherwise would have.

89.     Because not all brokerages joined in the conspiracy, the Clearinghouse Defendants raised the fees and/or removed the ability to fill purchases of the Relevant Securities to brokerages that did not comply with the anticompetitive scheme.

90.     Plaintiff and the Class have been injured and will continue to be injured in their business and property by not being able to recoup any losses incurred as a result of Defendants' unlawful conduct as they cannot purchase stock or short positions in the Relevant Securities at the price that was available to them when buying was restricted.

91.     Accordingly, Plaintiffs and the Class seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law to terminate the anticompetitive conduct alleged herein.

## SECOND CAUSE OF ACTION

**VIOLATION OF THE DONNELLY ACT**
**N.Y. Gen. Bus. L. § 340**
**(Against All Defendants)**

92.     Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

93.     Upon information and belief, the Defendants and their conspirators entered into an unlawful agreement and engaged in a continuing unlawful trust in restraint of trade and commerce as described herein in violation of the Donnelly Act, N.Y. Gen. Bus. L. § 340 to fix, stabilize, maintain or suppress the price of the Relevant Securities.

94.     The Fund Defendants conspired, combined, agreed, and colluded with the Brokerage and Clearinghouse Defendants to restrict Plaintiffs and the Class from purchasing shares of the Relevant Securities, while placing no such restriction on the Fund Defendants, in order to drive the price of the Relevant Securities down so that the Fund Defendants could purchase the Relevant Securities at artificially deflated prices to cover their short positions.

95.     Despite restricting Plaintiffs and the Class from purchasing shares of the Relevant Securities, the Brokerage Defendants have continued to allow Plaintiff and the Class to sell shares of the Relevant Securities.  Faced with sharp decreases in the price of their positions in the Relevant Securities due to Defendants' unlawful conduct, Plaintiffs and the Class were induced to sell their shares in the Relevant Securities at a lower price than they otherwise would have.

96.     Because not all brokerages joined in the conspiracy, the Clearinghouse Defendants raised the fees and/or removed the ability to fill purchases of the Relevant Securities to brokerages that did not comply with the anticompetitive scheme.

97.     As a direct, foreseeable, and proximate result of Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained damages.

98.     Plaintiffs and the Class seek equitable and injunctive relief, including treble damages and the cost of suit, including attorneys' fee, pursuant to N.Y. Gen. Bus. L. § 340, to correct the anticompetitive effects caused by Defendants' unlawful conduct.

### THIRD CAUSE OF ACTION

**VIOLATION OF NEW YORK DECEPTIVE TRADE PRACTICES ACT**
**N.Y. Gen. Bus. L. § 349**
**(Against All Defendants)**

99.     Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

100.    The New York Deceptive Trade Practices Act, N.Y. Gen. Bus. L. § 349, prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York.  Defendants' anticompetitive scheme, as described above, constitutes a deceptive and unfair business practice in violation of the New York Deceptive Trade Practices Act.

101.    Defendants' conduct also contravened their duty of good faith and fair dealing, which the New York Deceptive Trade Practices Act implies in transactions between consumers and businesses.

102.    The damages sustained by Plaintiffs and the Class were a direct and foreseeable result of, and were proximately caused by Defendants' deceptive business practices.

103.    Defendant acted at least negligently, but also recklessly or intentionally, and with improper intent, actual or constructive knowledge, and willfulness, resulting in damage.

104.    As a direct, foreseeable, and proximate result of Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained damages, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

**VIOLATION OF NEW YORK DECEPTIVE TRADE PRACTICES ACT**
**N.Y. Gen. Bus. L. § 350**
**(Against All Defendants)**

105.    Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

106.    New York Deceptive Trade Practices Act, N.Y. Gen. Bus. L. § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York.

107.    Defendants violated New York Deceptive Trade Practices Act by making or disseminating, or causing to be made or disseminated, before the public, untrue or misleading statements in connection with the sale of goods or services, that Defendants knew or should have known were untrue or misleading, including but not limited to statements concerning the reliability, fairness, and accuracy of the value of the Relevant Securities.

108.    Brokerage Defendants executed trades on customer's behalf without consent and made false and misleading statements regarding the reasons for executing such trades.

109.    Fund Defendants made misstatements about their role in the conspiracy to the public.

110.    Clearinghouse Defendants made misleading statements to the public about their involvement in the conspiracy while demanding significantly more collateral from member brokers to facilitate the conspiracy.

111.    As a direct, foreseeable, and proximate result of Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against the Brokerage Defendants)

112.    Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

113.    Plaintiffs and members of the Class entered into agreements with the Brokerage Defendants.   They agreed to the Brokerage Defendants' terms and conditions by using the Brokerage Defendants' services.

114.    Plaintiffs and members of the Class fulfilled and performed their obligations under these contracts by adhering to their terms and using Brokerage Defendants' trading services through their websites and trading platforms.

115.    Upon entering into the agreements with the Brokerage Defendants, Plaintiffs and members of the Class could and did trade in the Relevant Securities.

116.    The Brokerage Defendants were obligated to provide the trading services required under those contracts at all times and made the implied promise that they would not do anything to unfairly interfere with the rights of Plaintiff and members of the Class to receive the benefits of the agreements.

117.    The Brokerage Defendants unfairly interfered with the rights of Plaintiffs and the members of the Class to receive the benefits of the agreements by, among other things: (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying Relevant Securities for the Brokerage Defendants own interest and not disclosing those interest to Plaintiffs and the Class.

118.    As a direct, foreseeable, and proximate result of the Brokerage Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained damages, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**NEGLIGENCE**
**(Against the Brokerage Defendants)**

119.    Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

120.    The Brokerage Defendants had a common law duty to exercise reasonable care in conducting and facilitating transactions for its customers on the free and open market.   The Brokerage Defendants further had a duty to comply with N.Y. Gen. Bus. L. §§ 340, 349 and 350.

121.    The Brokerage Defendants unlawfully breached their duties by, among other things (i) removing the Relevant Securities without notice from their websites, apps and trading platforms; (ii) failing to provide financial services related to Relevant Securities; and (iii) failing to notify Retail Investors in a timely manner of the prohibition in purchasing of the Relevant Securities.

122.    The Brokerage Defendants' conduct set forth in this Complaint was want of even scant care, and their acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct expected of a stockbroker.

123.    The Brokerage Defendants' negligent and wrongful breaches of their duties owed to Plaintiffs and members of the Class proximately caused losses and damages that would not have occurred but for the Brokerage Defendants' gross breach of their duty of due care.

124.    As a direct, foreseeable, and proximate result of the Brokerage Defendants' aforesaid misconduct, Plaintiffs and the other Class members sustained damages, in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (Against the Brokerage Defendants)

125.     Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

126.     As licensed providers of financial services, the Brokerage Defendants at all relevant times herein were fiduciaries to the Plaintiffs and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf.  Each Brokerage Defendant also acted as a fiduciary to each and every customer who agreed to their respective terms and conditions.

127.     The Brokerage Defendants reached their fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was going to remove Relevant Securities purchases in a timely manner; actually removing Relevant Securities; removing Relevant Securities for their own pecuniary benefits; misrepresenting and omitting material information; failing to provide access to its financial services in a timely manner; failing to comply with all applicable legal, regulatory, and licensing requirements; and failing to exercise trades and actions requested by customers in a complete and timely manner.

128.     The Brokerage Defendants' aforesaid misconduct has caused Plaintiffs and the other Class members to sustain, and continue to sustain, damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### CONSTRUCTIVE FRAUD
### (Against the Brokerage Defendants)

129.     Plaintiffs repeat and re-allege each and every allegation as if set forth in full herein.

130.    The Brokerage Defendants had a duty to exercise reasonable care in conducting and facilitating securities transactions for its customers.

131.    The Brokerage Defendants owed the Plaintiffs and Class members a fiduciary duty to fully disclose material facts as relates to their brokerage relationship.

132.    The Brokerage Defendants represented to Plaintiffs and Class members that they were brokerage services offering free and fair trading in the stock market.

133.    Plaintiffs and Class members chose to use the Brokerage Defendants websites, apps and trading platforms in part due to assurances that they would be able to trade on the stock market.

134.    The Brokerage Defendants subsequently and selective restricted and limited the securities that Plaintiffs and Class members were able to buy on their websites, apps and trading platforms, contrary to their representations.

135.    Plaintiffs and Class members' reliance on the Brokerage Defendants' false representations were substantial factors in causing Plaintiffs' harm as they were prohibited from trading freely given the Brokerage Defendants' restrictions.


## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter judgment on their behalf and on behalf of the Classes defined herein as follows:

A.    Determine that this action may be maintained as a class action and declare Plaintiffs and their counsel be appointed class representatives and class counsel, respectively;

B.    That the Court enter judgment against Defendants and in favor of Plaintiffs and the Classes on all counts;

C.    Permanently enjoin Defendants from continuing their unlawful contact, so as to assure that similar anticompetitive conduct does not continue to occur in the future;

D.    Award the Class damages and, where applicable, treble, multiple, punitive, and/or other damages, in an amount to be determined at trial, including interest;

E.    Grant Plaintiff and the Classes equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' ill-gotten gains and award Plaintiff damages as provided by law in an amount to be determined at trial;

F.    Award Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees as provided by law; and order Defendants to bear the cost of notice to the absent Class members, as well as the administration of any common fund; and

G.    Grant such other further relief as is necessary to correct for the anticompetitive market effects caused by Defendants' unlawful conduct, as the Court deems just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all of the triable issues of fact and damages stated herein.

Dated: New York, New York             Respectfully submitted,
February 8, 2021

                                      **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                                      By:    /s/*Frank R. Schirripa*
                                             Frank R. Schirripa
                                             Kathryn A. Hettler
                                             Eugene Zaydfudim
                                             112 Madison Avenue, 10th Floor
                                             New York, New York 10016
                                             Telephone: (212) 213-8311
                                             Facsimile: (212) 779-0028

                                      *Counsel for Plaintiffs and Proposed Class*